Bij the Court.

It is proved in this case, by oral. evidence, that a contract was entered into, between Thomas Yocum, the defendant now appellant, and Henry Raper, the conditions . of Which were that if Raper would take up a certain note Of $ 550, subscribed by the appellant in favor of a certain Benjamin Fields, he the appellant would sell him a mulatto boy. In consequence qf this agreement it appears that Raper .pawk Fields in sundry articles the price agreed *443 Upon between him and the appellant, to wit, S'500, and that the amount of the note in rields!s hands being'more than the purchase money, the appellant gave Raper his note for the balance. It fur: ther appears that the appellant had prepared a bill of sale of the mulatto boy and signed it; but that he never delivered it, alleging that Raper had not complied with his part of the Contract, and that he has since destroyed that papef. Fields having riot surrendered the note which Raper was to take up, Raper, who had paid the Cull price of the mulatto boy, brought the present suit tó compel the appellant to make him a legal and complete title to that slave. As to the possession Raper seems to have had it since the bargain -was entered into.
Two questions arise in this case ; one of law, and that is, whether a verbal promise, to sell that kind of property for the alienation of which the laws require a written act, can ever be -recognised and enforced by a court of justice ; the other of faet, to wit, whether Raper had complied with his engagement, so far as to enable him to call Upon ' the appellant for a performance of his. ⅜ - ⅛ . •< ⅜, „
I. The language of the law (Civil Code 344,/ art. 2,) vyith respect to the sale of immoveables and slaves is :. “all verbal sales cf any ’ “things shall be null, as well for t!ürdÉeñs¿N&|Í&a% *444 for the contracting parties themseives, and the ° 1 ⅜ “testimonial proof of.it shall not be admitted.” In the same chapter speaking of the promise to sell ; “ a promise to sell amounts to a sale, when there “ exists a reciprocal consent of both parties as to “. the thing and the price thereof; but to have its “effect, either between the contracting parties or “ with regard to other persons, the promise to “ sell must be vésted with the same formalities as “are above prescribed 'm art. 2and 3, concerning. ‘f sales,;in all cases where the law directs that the “safe he committed to writing.” Civil Code 346, * art. 9.
Nothing can be more positive than this prohibition of- our laws, ever to recognise as valid a verbal sale or a verbal promise to sell an immoveable or a slave. Witnesses offered to prove such a contract cannot ever be heard. Yet we are Galled upon, in opposition to this provision, to listen to that; testimonial proof, and to decide upon the merits of that'verbal contract, under pretence that we may, in certain cases, soften the rigour of the "law. But surely, if such power can be exercised* Jby courts of justice, it never can go the length of 'declaring that lawful which the laws have said shall be illegal.
In this case, however, it is alleged -that the contract was not entirely verbal, because, according to the appellant’s own confession, he had ytfepafed;,a bill of safe, ready to be delivered to *445 the intended purchaser, as soon*as he would fulfil ... , . the stipulated condition. But this paper was only the consideration to be given for the compliance of- the other party with his engagement. It was not the instrument of the contract. That contract was never reduced to writing. We have ⅛-only from the mouth of the witnesses. 'They1 inform us that an agreement was entered into, between the appellant and Raper, the conditions of which were that if Raper would take up a certain note of the Appellant, the appellant would. make him a bill of sale of a certain slave. Whether the appellant did or did not prepare that bill of sale ready for delivery, as the case might be, is not the question. The contract itself, which this court is called upon to enforce, was only-verbal, and therefore' not such as the laws can recognise. ' •
II. Finding ourselves under the necessity of reversing the judgment on that ground, it is hardly of ány use to inquire into the other question, to wit, whether Raper complied with his engage-1 ment so far as to authorise him to^ call on the appellant for a performance of his. npbtt this we cannot help observing that, however fair the conduct of Raper, and however Suspitious that of the other party may appear, Raper has not. executed that which he had. engaged todo, to Wit, taking up the note of the appellant. The *446 °f the appellees is certainly a hard one ; but their present suit to compel the appellant to the speétóc performance of his promise, must fail on this ground, as well as on the other.
It is,therefore, adjudged and decreed that the "judgment of the District Court be reversed, and that judgment be entered for the appellant with costs.